**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARCELINO M. CORDOVA,<br><br>             Plaintiff,<br>    v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of the<br>Social Security Administration,<br><br>             Defendant. | ) No. CV 13-7260-AS<br>)<br>)<br>) **MEMORANDUM OPINION**<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PROCEEDINGS**

    On October 3, 2013, Plaintiff filed a Complaint seeking review of the denial of her application for Social Security benefits. (Docket Entry No. 3.)  The parties consented to proceed before a United States Magistrate Judge.  (Docket Entry Nos. 7, 10.)  On February 5, 2014, Defendant filed an Answer to the Complaint along with the Administrative Record ("A.R.").  (Docket Entry Nos. 13–14.) The parties filed a Joint Stipulation ("Joint Stip.") on April 24, 2014, setting forth their respective positions on Plaintiff's claim.

1

(Docket Entry No. 15.) The Court has taken the matter under submission without oral argument. See C.D. Cal. L.R. 7-15.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

On February 1, 2012, Plaintiff filed an application for Disability Insurance Benefits. (A.R. 96, 172—73.) Plaintiff alleged an inability to work since November 1, 2007 due to neck, shoulder, and rib injury. (A.R. 172, 217.) On July 13, 2010, the Administrative Law Judge ("ALJ"), Zane A. Lang, examined the record and heard testimony from Plaintiff and vocational expert ("VE") Heidi Paul. (A.R. 81—95.) Plaintiff appeared and testified at a supplemental hearing held on March 10, 2011, along with VE June Hagen. (A.R. 68—80.) On March 18, 2011, the ALJ issued a decision denying Plaintiff's application. (A.R. 41—55.) The ALJ determined that Plaintiff had the following severe impairment: myofascial pain. (A.R. 46.) However, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. (See A.R. 52.)

Plaintiff requested that the Appeals Council review the ALJ's decision. (A.R. 40.) The request was denied on June 29, 2012. (A.R. 10.) The ALJ's decision then became the final decision of the Commissioner, allowing this Court to review the decision. See 42 U.S.C. §§ 405(g); 1383(c).

/ /
/ /
/ /
/ /

**PLAINTIFF'S CONTENTIONS**

Plaintiff alleges that the ALJ erred in: (1) discounting the credibility of Plaintiff's testimony and subjective complaints in support of her disability claim; (2) determining Plaintiff's residual functional capacity; and (3) finding that Plaintiff could perform other work such as cleaner, housekeeping and cafeteria attendant. (Joint Stip. 3.)

**DISCUSSION**

**A. The ALJ Did Not Err In Evaluating Plaintiff's Credibility**

An ALJ's assessment of a claimant's credibility is entitled to "great weight." See Anderson v. Sullivan, 914 F.2d 1121, 1124 (9th Cir. 1990); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985). "[T]he ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). In order to determine whether a claimant's testimony is credible, the ALJ engages in a two-step analysis. Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014).

First, the claimant "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (quoting 42 U.S.C.

§ 423(d)(5)(A)(1988)). In producing evidence of the underlying impairment, "the claimant need not produce objective medical evidence of the pain or fatigue itself, or the severity thereof." Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996). Instead, the claimant "need only show that [the impairment] could reasonably have caused some degree of the symptom." Id.

Second, once the claimant has produced the requisite objective medical evidence, the "ALJ may reject the claimant's testimony regarding the severity of her symptoms." Smolen, 80 F.3d at 1284. Absent affirmative evidence of malingering, however, the ALJ may only reject a plaintiff's testimony "by offering specific, clear and convincing reasons for doing so." Id. In assessing a claimant's alleged symptoms, an ALJ may consider: "(1) ordinary techniques of credibility evaluation, such as claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears to be less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." Id. An ALJ may also consider "the claimant's work record and observations of treating and examining physicians and other third parties." Id.

Here, the ALJ examined the Administrative Record and heard testimony from Plaintiff. Based on the record, the ALJ determined that Plaintiff had produced objective medical evidence of underlying impairments that "could reasonably be expected to cause some of the alleged symptoms." (A.R. 14.) However, the ALJ found that

Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (A.R. 14.)

The ALJ found that Plaintiff has myofascial pain syndrome. (A.R. 46.) Myofascial pain syndrome is a chronic pain disorder where pressure on sensitive points in the muscles (trigger points) causes pain in seemingly unrelated parts of the body.[1] Plaintiff alleges that he is unable to work due to chronic and intractable pain from the left side of his neck, down the left shoulder, and through the left middle back. (A.R. 47.)

The ALJ's reasons for rejecting the credibility of Plaintiff's subjective testimony are clear and convincing. First, the ALJ found that Plaintiff's subjective symptoms lacked support in the objective record. See Rollins v. Massanari, 261 F.3d 853, 856, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."). MRIs of Plaintiff's cervical spine and lumbar spine were unremarkable, showing no disc herniation and no significant central canal or neural foraminal stenosis. (A.R. 255, 303, 304.) A November 2008 orthopedic evaluation revealed normal heel-toe gait, a supple neck, no focal neurological deficits in the upper or lower

---

[1] See Diseases and Conditions: Myofascial Pain Syndrome, Mayo Clinic, http://www.mayoclinic.org/diseases-conditions/myofascial-pain-syndrome/basics/definition/con-20033195 (last accessed July 9, 2015).

extremities, and a full range of motion in the cervical and lumbar spine. (A.R. 251.) In December 2008, Plaintiff was referred to anesthesiologist Vimal S. Lala. (A.R. 48, 252–56.) Upon examination, Plaintiff had palpable trigger points in the muscles of the head and neck. (A.R. 254.) Nonetheless, Plaintiff had a stable lumbar spine with normal strength and tone, full (5/5) strength in the upper and lower extremities, normal (2+) reflexes, and a negative straight leg raise test.[2] (A.R. 254.) Plaintiff also exhibited normal neurological findings, and upon mental status examination, Plaintiff was fully oriented with intact recent and remote memory, and normal mood and affect. (A.R. 254–55.)

The ALJ also determined that Plaintiff's treatment was almost entirely conservative in nature. See Parra v. Astrue, 481 F.3d 742, 750–51 (9th Cir. 2007) (conservative treatment can diminish a claimant's credibility regarding the severity of an impairment). Although Plaintiff reported taking medications such as Vicodin and Soma, he also stated that applying heat, massage, and lying flat helped his pain. (A.R. 258.) Moreover, treatment providers consistently prescribed medications and physical therapy, but never prescribed an assistive device for ambulation. (A.R. 47–50, 258, 271, 283, 294, 309, 318–19.) While the fact that Plaintiff was never prescribed an assistive device to ambulate is not dispositive on his disability claim, it certainly detracts from his credibility as to

---

[2] A medical practitioner performs a straight leg raise test by gently raising the patient's leg upward while the patient is lying down. A negative straight leg raise test suggests a lack of nerve root irritation in the lower back. The Merck Manual of Diagnosis and Therapy, 17th Ed., at 1490 (1999).

debilitating back pain. See Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) ("These are not the sort of description and recommendations one would expect to accompany a finding that [the claimant] was totally disabled under the Act.").

Furthermore, the ALJ found that Plaintiff's treatment was not only conservative but effective in improving his symptoms. Impairments that can be controlled effectively with medication are not disabling. Warre v. Comm'r of Soc. Sec., 439 F.3d 1001, 1006 (9th Cir. 2006). Plaintiff frequently reported that his medications helped his pain and also stated that re-starting physical therapy helped. (A.R. 223, 258, 271, 318—19.) Moreover, the ALJ noted that Plaintiff experienced no side effects from the medications he was prescribed. (A.R. 48 (citing A.R. 258).) Although Plaintiff indicated that he still had some pain despite medication, nothing requires Plaintiff to be pain free in order to work. See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (disability benefits are intended for "people who are unable to work; awarding benefits in cases of nondisabling pain would expand the class of recipients far beyond that contemplated in the statute").[3]

---

[3] The ALJ also noted that no evidence in the record showed that Plaintiff followed through with a recommendation to see a rheumatologist. (A.R. 48, 261, 278.) See Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) ("The ALJ may consider many factors in weighing a claimant's credibility," including "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment."). Plaintiff claims, however, that he had difficulty obtaining appropriate treatment because of his lack of medical insurance. (Joint Stip. 14.) This is a valid excuse for failing to obtain treatment. See Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) (claimant's inability to pay for medication provided a valid reason for her failure to obtain medication); Gamble

7

The ALJ also explained that inconsistencies between Plaintiff's statements and his conduct undermined his credibility. (A.R. 50.) See Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2010) (the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct). For example, in a pain questionnaire, Plaintiff reported getting rides to go shopping and needing assistance with household chores. (A.R. 225.) However, during the hearing, Plaintiff testified that he could go food shopping when he had money, that he tried to sweep, pick up his children's clothes, put dishes in the dishwasher, and separate clothes for laundry. (A.R. 73.) Plaintiff contends that these daily activities do not detract from the claimant's credibility because they do not equate to a capacity to engage in substantial gainful activity. (Joint Stip. 6.) However, an ALJ may rely on a claimant's activities of daily living in assessing credibility not only if the activities are directly applicable to work, but also when they are inconsistent with the claimant's subjective allegations of disability. See id. at 1112–13 ("While a claimant need not "vegetate in a dark room" in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are

---

v. Chater, 68 F.3d 319, 320-22 (9th Cir. 1995) (failure to obtain treatment, even if the alleged condition is remediable, is not a sufficient reason to deny benefits where the claimant suffers from financial hardships). Nevertheless, any error in the ALJ's reliance on Plaintiff's failure to see a rheumatologist was harmless, because the ALJ's remaining reasoning and ultimate credibility determination was adequately supported by substantial evidence in the record. Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008).

transferable to a work setting.  Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."); Valentine v. Astrue, 574 F.3d 685, 693 (9th Cir. 2009) (affirming ALJ's finding that claimant's "non-work activities . . . are inconsistent with the degree of impairment he alleges.").

Based on the noted inconsistencies in the objective medical evidence, conservative course of treatment, and inconsistencies between Plaintiff's statements and his conduct, the Court finds that the ALJ provided "clear and convincing" reasons for discounting Plaintiff's testimony on the severity of his symptoms and limitations.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) ("If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second guessing.")

**B.  The ALJ Did Not Err In Determining Plaintiff's Residual Functional Capacity**

Residual functional capacity is the ability to do physical and mental work activities on a sustained basis despite limitations from impairments.  20 C.F.R. § 416.920(e).  Here, the ALJ found the Plaintiff had the residual functional capacity to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b):

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very

>little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. 404.1567(b). The ALJ determines RFC based upon medical records, physicians' opinions, and the claimant's description of his limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a)(3). Plaintiff argues that the RFC is not supported by substantial evidence because the ALJ improperly rejected the opinion of Plaintiff's treating physician, Dr. Chin.

"The ALJ is responsible for resolving conflicts in the medical record." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008). Such conflicts may arise between a treating physician's medical opinion and other evidence in the claimant's record. A treating physician's opinion is usually entitled to "substantial weight." Bray v. Comm'r, Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009) (quoting Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988)). A treating physician's opinion is given controlling weight when it is "well-supported by medically accepted clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(d)(2). On the other hand, if a treating physician's opinion "is not well-supported" or "is inconsistent with other substantial evidence in the record," then it should not be given controlling weight. Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007).

10

Substantial evidence that contradicts a treating physician's opinion may consist of either (1) an examining physician's opinion or (2) a nonexamining physician's opinion combined with other evidence. Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). In the case of an examining physician, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not substantial evidence." Orn, 495 F.3d at 632 (citing Murray v. Heckler, 722 F.2d 499, 501-02 (9th Cir. 1984)). To constitute substantial evidence, the examining physician must provide "independent clinical findings that differ from the findings of the treating physician." Id. (citing Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985)). Independent clinical findings can be either "diagnoses that differ from those offered by another physician and that are supported by substantial evidence . . . or findings based on objective medical tests that the treating physician has not herself considered." Id. (citing Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984); Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995)).

"The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Lester, 81 F.3d at 831. Such an opinion is only substantial evidence if supported by "substantial record evidence." Id.

If the ALJ determines that a treating physician's opinion is inconsistent with substantial evidence and is not to be given

11

controlling weight, the opinion remains entitled to deference and should be weighed according to the factors provided in 20 C.F.R. § 404.1527(d). Orn, 495 F.3d at 631. These factors include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the extent to which the opinion is supported by relevant medical evidence; (4) the opinion's consistency with the record as a whole; and (5) whether the physician is a specialist giving an opinion within his specialty. 20 C.F.R. § 404.1527(d). If a treating physician's opinion is not sufficiently supported by medical evidence and other substantial evidence in the case, however, the ALJ need not give the opinion controlling weight. Orn, 495 F.3d at 631. Furthermore, if the treating doctor's opinion is contradicted by another doctor, the ALJ may reject the treating doctor's opinion by giving specific and legitimate reasons for doing so. Id. at 632. Inconsistencies and ambiguities within the treating physicians' own opinion create such "specific and legitimate" reasons for rejecting the opinion. Matney on behalf of Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992).

Here, the ALJ determined that Dr. Chin's opinion – with respect to the standing, walking, and sitting limitations that he imposed – should not be given controlling weight because it was not "well-supported" by the record. (A.R. 50.) The ALJ provided several reasons for this finding, all of which are supported by substantial evidence in the record. As a preliminary consideration, the ALJ noted that Dr. Chin stated that his assessment was based on a review of medical records only, (see A.R. 338), and that there does not

appear to be any actual treatment records from Dr. Chin. (A.R. 49.) See Magallanes v. Bowen, 881 F.2d 747, 754 (9th Cir. 1989) (ALJ may reject treating physician's retrospective opinion which is merely based on a review of plaintiff's historical records, rather than on the treating physician's contemporaneous evaluation); Benton v. Barnhart, 331 F.3d 1030, 1038 (9th Cir. 2003) (duration of treatment relationship and frequency and nature of contact relevant in weighing opinion).

The ALJ cited to medical records indicating that Plaintiff's ankle injury could not have caused the standing and walking limitations imposed by Dr. Chin. For example, the treatment records from Plaintiff's surgeon, Dr. Ahluwalia, showed a "satisfactory resolution to the claimant's right ankle fracture, insofar as he was able to return to ambulation approximately 3 months following surgery." (A.R. 50.) Dr. Chin's failure to list a fractured right ankle as a diagnosis or impairment was likely, as the ALJ stated, based on a "lack of symptoms requiring any treatment or limitations to be imposed." (A.R. 50.) This finding is supported by the state agency medical consultant, Dr. Mitchell, who opined that Plaintiff's condition was nonsevere at the alleged onset date of February 2009 and indicative of a light RFC one year later.[4] (A.R. 293.) See

---

[4] The ALJ also points to Dr. Mitchell's notation that at the time Plaintiff injured his ankle, he was "physically able to jump over another person as he was walking down a stair well." (A.R. 293.) Plaintiff takes issue with this statement, stating that it "make[s] it appear as though Plaintiff does this for sport." (A.R. 22.) However, Dr. Mitchell acknowledges that Plaintiff had to undergo surgery for the ankle injury, which led him to conclude that Plaintiff would require a light RFC one year later. This is

Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) ("[t]he opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record").

The ALJ additionally found that Dr. Chin's opinion regarding Plaintiff's walking and sitting limitations was inconsistent with Plaintiff's conduct and testimony. For example, while Dr. Chin reported that Plaintiff was only able to walk one block, Plaintiff testified at both the July 2010 hearing and March 2011 hearing that he could walk up to 2 blocks. (See A.R. 72, 90.) Moreover, according to the records submitted by Plaintiff's ankle surgeon, Dr. Ahluhwalia, Plaintiff reported being able to walk and use a walker boot for "long walks" after his surgery. (A.R. 309.) Although Plaintiff disagrees that these are true inconsistencies, the ALJ's interpretation of the record is entitled to deference. See Tommasetti v. Astrue, 533 F.3d 1035, 1041—42 (9th Cir. 2008) ("the ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."). Moreover, the ALJ found Dr. Chin's assessment of Plaintiff's standing and walking limitations to be inconsistent with his treatment recommendations. Dr. Chin did not prescribe an assistive device for walking and only recommended ice packs, physical therapy, and prescription medications as treatment. (A.R. 342.) These are not the "recommendations one would expect to accompany a finding that [Plaintiff] was totally disabled under the Act." Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001); Johnson v.

---

consistent with the ALJ's RFC finding that Plaintiff could perform the full range of light work. (A.R. 47.)

Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (ALJ may properly rely on the fact that only conservative treatment has been prescribed).

With respect to Plaintiff's complaints of "total body pain," the ALJ stated that these complaints were also inconsistent with the objective medical record. (A.R. 50.) Plaintiff testified at the hearing that he was "able to lift 5 pounds on the left side but after doing this three times, he loses his ability to grasp." Although Dr. Chin stated that Plaintiff had reduced left-hand grip strength, his strength was graded at 4/5. (A.R. 337.) Moreover, Dr. Chin opined that Plaintiff could lift and carry up to 10 pounds frequently, and up to 20 pounds occasionally in a competitive work situation. (A.R. 337.) This is entirely consistent with the ALJ's RFC assessment.[5]

Accordingly, substantial evidence supports the ALJ's RFC finding.

/ /
/ /
/ /

---

[5] Plaintiff contends that the ALJ did not specifically address Dr. Chin's assessment that Plaintiff was limited in his ability to twist and stoop occasionally, rarely crouch and climb ladders or stairs, and that his experience of pain was severe enough to frequently interfere with his ability to pay attention and concentrate. (A.R. 340—41.) However, the ALJ is not required to discuss every piece of evidence in the record. See Hiler v. Astrue, 687 F.3d 1208, 1212 (9th Cir. 2012) ("the ALJ is not required to discuss evidence that is neither significant nor probative"). Because substantial evidence supports the ALJ's finding that Dr. Chin's opinion should not be given controlling weight, the ALJ need not address each of the limitations provided by that doctor. (A.R. 50.)

**C. The ALJ Properly Determined Plaintiff Can Perform Other Work**

Once the ALJ determines a claimant's RFC and finds that he cannot return to his past relevant work, "the burden of proof shifts to the Secretary to show that the claimant can do other kinds of work." Embrey v. Bowden, 849 F.2d 418, 422 (9th Cir. 1988). At this point, ALJs "can call upon a vocational expert to testify as to: (1) what jobs the claimant, given his or her [RFC], would be able to do; and (2) the availability of such jobs in the national economy." Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999) (citing 20 C.F.R. § 404.1526). If the claimant does not have the RFC to work in any available jobs, he is considered disabled. 20 C.F.R. § 404.1520(a)(4)(v).

Plaintiff contends that the ALJ's reliance on the VE's testimony was misplaced because the hypothetical question posed to the VE failed to include all of Plaintiff's limitations, specifically the limitations set forth by Dr. Chin. (Joint Stip. 25.)

A hypothetical question posed to a vocational expert must set out all the limitations and restrictions of the claimant. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988) (emphasis in original). The hypothetical question must be accurate, detailed, and supported by the medical record. Gamer v. Secretary of Health & Human Servs., 815 F.2d 1275, 1279-80 (9th Cir. 1987). However, the ALJ is not required to include limitations in the hypothetical that are not supported by substantial evidence. See Osenbrock v. Apfel, 240 F.3d 1157, 1164-65 (9th Cir. 2001).

16

The ALJ posed multiple hypothetical questions to VE Heidi Paul. (A.R. 77–80.) The first hypothetical included the following limitations: lift 20 pounds occasionally and 10 pounds frequently, and sit, stand, or walk six hours out of an eight hour day. (A.R. 78.) The VE testified that a hypothetical person with these limitations could perform various jobs available in the national economy, including that of a cleaner/housekeeper and a cafeteria attendant. (A.R. 78.)

Plaintiff contends that the ALJ failed to include a hypothetical with Dr. Chin's postural limitations, including the ability to occasionally bend and twist, rarely crouch, or climb ladders or stairs. (Joint Stip. 25 (citing A.R. 341).) Plaintiff states that this limitation is inconsistent with the work required of a cleaner, a position that requires occasional crouching. (Joint Stip. 26.) However, other than Dr. Chin's opinion, which was rejected by the ALJ for the reasons stated above, Plaintiff cites to no evidence in the record for this postural limitation. The vocational expert at Plaintiff's initial hearing also identified other light, unskilled jobs that Plaintiff could perform such as cashier, electronics worker, and mail clerk, all of which would accommodate Dr. Chin's assessed postural limitations. (A.R. 92.) Moreover, because Plaintiff can perform light work, he can also perform sedentary work, which considerably expands the number of jobs available. See Widmark v. Barnhart, 454 F.3d 1063, 1070 (9th Cir. 2006) ("The full range of light work includes unskilled, sedentary jobs."); see also 20 C.F.R. § 404.1567(b) ("If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting

factors such as loss of fine dexterity or inability to sit for long periods of time.")

Plaintiff also notes that when the Vocational Expert was presented with a hypothetical that included Dr. Chin's limitations, including the inability to concentrate due to pain, he concluded that there would be no jobs available in the national economy for that hypothetical individual. (A.R. 79—80.) However, as set forth above, the ALJ's assessment of Plaintiff's RFC did not include Dr. Chin's limitations, and this finding was supported by substantial evidence in the record.

Accordingly, the Court finds that the ALJ properly relied on the VE's testimony because the hypotheticals presented to the VE considered all of the claimant's limitations that were supported by the record. See Thomas v. Barnhart, 278 F.3d 947, 956 (9th Cir. 2002) (considering VE testimony reliable if the hypothetical posed includes all of claimant's functional limitations, both physical and mental supported by the record); Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) ("A VE's recognized expertise provides the necessary foundation for his or her testimony").

/ /
/ /
/ /
/ /
/ /
/ /
/ /

**ORDER**

For the foregoing reasons, the decision of the Commissioner is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: July 20, 2015.

_/s/_____
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE